# In the United States Court of Appeals for the First Circuit

UNITED STATES OF AMERICA,
*Appellee,*

v.

LUIS O. PÉREZ-GREAUX, t/n LUIS ORLANDO PÉREZ-GREAUX,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Puerto Rico
Case No. 18-cr-389-FAB
Hon. Francisco A. Besosa, U.S. District Judge

## RESPONSE TO PETITION FOR REHEARING AND REHEARING EN BANC

RACHEL BRILL
Federal Public Defender
District of Puerto Rico
241 F.D. Roosevelt Avenue
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Kevin_Lerman@fd.org

FRANCO L. PÉREZ-REDONDO
Assistant Federal Public Defender
Supervisor, Appeals Division

KEVIN E. LERMAN
Research & Writing Attorney

*Attorneys for Defendant-Appellant
Luis O. Pérez-Greaux*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.........................................................................ii

INTRODUCTION AND SUMMARY ...................................................... 1

STATEMENT ......................................................................................... 2

REASONS FOR DENYING THE PETITION ........................................ 6

    I.    The Panel's Decision Is Correct And Creates No Conflict With Supreme Court Precedent............................. 6

        A.    *O'Brien* and *Staples* strongly support the panel's decision. ......................................................................... 7

        B.    The government misconstrues *Dean*, *Carter*, and *Flores-Figueroa*. ....................................................... 10

    II.    The Panel's Decision Creates No Intra-Circuit Conflict..... 17

    III.    The Government Overstates The Scope And Significance Of Any Inter-Circuit Conflict. ......................... 20

CONCLUSION ..................................................................................... 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carter v. United States*,
530 U.S. 255 (2000) ................................................................ 10, 13, 14

*Castillo v. United States*,
530 U.S. 120 (2000) ............................................................ 7, 8, 12, 14

*Dean v. United States*,
556 U.S. 568 (2009) ................................................................ 10, 11, 12

*Elonis v. United States*,
575 U.S. 723 (2015) ................................................................................ 13

*Flores-Figueroa v. United States*,
556 U.S. 646 (2009) ........................................................ 5, 10, 15, 16

*Rehaif v. United States*,
139 S. Ct. 2191 (2019) ....................................................................... 16

*Staples v. United States*,
511 U.S. 600 (1994) .................................................................. 5, 7, 9, 10

*United States v. Burwell*,
690 F.3d 500 (D.C. Cir. 2012) ................................................. 7, 16, 20

*United States v. Ciszkowski*,
492 F.3d 1264 (11th Cir. 2007) .......................................................... 20

*United States v. Collazo-Aponte*,
281 F.3d 320 (1st Cir. 2002) ....................................................... 18, 19

*United States v. Haile*,
685 F.3d 1211 (11th Cir. 2012) .......................................................... 20

*United States v. Harris*,
959 F.2d 246 (D.C. Cir. 1992) ............................................................ 20

*United States v. Laureano-Pérez,*
  797 F.3d 45 (1st Cir. 2015) ................................................ 18

*United States v. Mojica-Báez,*
  229 F.3d 292 (1st Cir. 2000) .............................................. 19

*United States v. Morosco,*
  822 F.3d 1 (1st Cir. 2016) ........................................ 18, 19

*United States v. Nieves-Castaño,*
  480 F.3d 597 (1st Cir. 2007) .............................................. 17

*United States v. O'Brien,*
  560 U.S. 218 (2010) ......................... 4, 7, 8, 10, 11, 12, 13, 14

*United States v. Peña-Lora,*
  225 F.3d 17 (1st Cir. 2000) ......................................... 19, 20

*United States v. Pérez-Greaux,*
  83 F.4th 1 (1st Cir. 2023) ................................................... 1

*United States v. Ramírez-Frechel,*
  23 F.4th 69 (1st Cir. 2022) ............................................... 16

*United States v. Rivera-Rivera,*
  555 F.3d 277 (1st Cir. 2009) .............................................. 18

*United States v. Shea,*
  150 F.3d 44 (1st Cir. 1998) ............................................... 19

*United States v. Woodberry,*
  987 F.3d 1231 (9th Cir. 2021) ........................................... 21

*United States v. X-Citement Video, Inc.,*
  513 U.S. 64 (1994) .......................................................... 13

## Statutes

18 U.S.C. § 921(a)(24) .................................................... 17

18 U.S.C. § 922(o) ............................................... 3, 17, 18

18 U.S.C. § 924(c)(1)(A) .................................................. 7, 9, 11, 16

18 U.S.C. § 924(c)(1)(A)(i) ............................................... 11

18 U.S.C. § 924(c)(1)(A)(iii) ........................................ 11, 12

18 U.S.C. § 924(c)(1)(B)(i) ........................................... 19, 21

18 U.S.C. § 924(c)(1)(B)(ii) ........................................ *passim*

18 U.S.C. § 1028A(a)(1) .................................................. 15

18 U.S.C. § 2113(a) ......................................................... 13

26 U.S.C. § 5845(a)(6) ...................................................... 9

26 U.S.C. § 5845(b) ......................................................... 9

26 U.S.C. § 5861(d) ......................................................... 9

**Rules**

Fed. R. Crim. P. 29 ........................................................... 4

## INTRODUCTION AND SUMMARY

Officers seized illegal drugs and an unloaded handgun from Luis Pérez-Greaux's home in Puerto Rico. He was keeping the handgun for someone else and did not know it was capable of firing as a machinegun. The government nonetheless tried him on a machinegun offense— possessing a machinegun in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(B)(ii)—which carries a *consecutive*, mandatory-minimum sentence of *30 years*. But the government never sought to prove that Mr. Pérez *knew* the weapon had machinegun characteristics. The jury convicted him without assessing machinegun mens rea, and the court sentenced him to 36.5 years in prison.

Reaffirming the bedrock principle of mens rea, as elucidated in a long line of Supreme Court precedents, the unanimous panel properly corrected this error by holding that the machinegun offense in § 924(c)(1)(B)(ii) requires scienter as to the fact that the firearm was a machinegun. *United States v. Pérez-Greaux*, 83 F.4th 1 (1st Cir. Sept. 28, 2023). There is no basis to rehear the panel's careful, thorough, and correct decision.

No Supreme Court case in any remotely analogous context has held that scienter as to a critical substantive element of an offense can simply be cast aside. Especially not when that offense carries a consecutive, decades-long mandatory-minimum sentence. Nor does the *Pérez-Greaux* opinion conflict with any First Circuit precedent. And the out-of-Circuit cases the petition consigns to its final paragraph are stale and provide no ground for further review. The government's petition ultimately reduces to a disagreement on the merits. But that is not a basis for rehearing, and the panel's carefully considered decision that § 924(c)(1)(B)(ii) is not a strict-liability offense is, in any event, entirely correct. The Court should deny rehearing.

## STATEMENT

**1.** In 2018, a Puerto Rico police officer obtained a search warrant of Mr. Pérez's home by filing an affidavit asserting that surveillance and other efforts led the officer to believe Mr. Pérez had an unlicensed pistol. Slip Op. ("Op.") 4. State officers executed the warrant while a federal officer watched. From a locked safe in Mr. Pérez's bedroom, officers confiscated bulk cocaine; from an upper closet shelf, they confiscated a bagged-up, unloaded Glock pistol and ammunition. *Id.* at 4-5.

Mr. Pérez was planning to mail the contraband to the United States. Op. 5. He was storing the packaged, unloaded pistol for someone else. *Id.* Post-arrest statements gave no indication that Mr. Pérez was aware of the gun's automatic firing capability. *Id.* at 5-6.

**2.** A superseding indictment charged Mr. Pérez with five counts. Op. 6. As relevant here, Count Two charged possession of a machinegun in furtherance of a drug-trafficking crime, in violation of § 924(c)(1)(B)(ii). *Id.* That statute provides that whoever possesses a "machinegun" in furtherance of a crime of violence or drug-trafficking crime, "shall be sentenced to a term of imprisonment of not less than 30 years." 18 U.S.C. § 924(c)(1)(B)(ii). Before trial, the government dismissed a separate machinegun possession charge under 18 U.S.C. § 922(o). Pet. 4 n.2.

At trial, a government firearms expert testified that the Glock pistol was not manufactured to be fully automatic but it had been modified. Op. 7. The expert verified the gun's automatic nature by firing it. *Id.*

Having voluntarily dismissed the § 922(o) charge that would have required proof of scienter, the government requested jury instructions relieving it from proving mens rea for the § 924(c)(1)(B)(ii) charge.

Mr. Pérez argued—as he had ahead of trial—that the government must prove *he knew* the pistol was automatic, which he did not. But the district court denied his Rule 29 acquittal motion and his requested instruction, concluding that § 924(c)(1)(B)(ii) contained no "subjective *mens rea* requirement." Op. 8. Following the jury's guilty verdict, Mr. Pérez renewed his Rule 29 motion. The court reiterated its prior ruling. *Id.* at 9. Along with the drug conviction, Mr. Pérez was sentenced to 36.5 years' imprisonment, *id.*, with 30 years constituting the mandatory minimum prescribed by § 924(c)(1)(B)(ii).

**3.** On appeal, Mr. Pérez challenged the district court's denial of his Rule 29 motion and the court's jury instructions. Op. 10. In a unanimous opinion, the panel vacated and remanded. Regarding the threshold question whether § 924(c)(1)(B)(ii) contains a mens rea requirement, the panel comprehensively canvassed relevant Supreme Court precedent and concluded that the longstanding presumption of scienter applied. The panel emphasized the Supreme Court's holding in *United States v. O'Brien*, 560 U.S. 218 (2010), that the gun's nature as a machinegun in § 924(c)(1)(B)(ii) is a key *element* of the offense, not a mere sentencing enhancement. Op. 21-23. It further stressed that the Supreme Court has

not cabined the scienter presumption to cases where entirely innocent conduct is at stake. *Id.* at 24-25 (citing *Flores-Figueroa v. United States*, 556 U.S. 646 (2009)).

The panel found no indication from Congress that the scienter presumption should not apply to § 924(c)(1)(B)(ii). It noted that the Supreme Court had squarely held, in the context of another machinegun offense using the same definition of "machinegun," that the government must prove that the defendant knew the gun was a machinegun. Op. 28-29, 31-32 (citing *Staples v. United States*, 511 U.S. 600, 602 (1994)).

The panel concluded that, "[m]erely because a defendant has already engaged in wrongdoing does not mean that the government should not be held to the burden of demonstrating that the defendant consciously chose between two distinct types of firearms." Op. 26. "[W]hile a § 924(c)(1)(B)(ii) defendant might be guilty of the predicate offense—that is, possession of a firearm in furtherance of a crime of violence or drug trafficking crime—we see no logic in dispensing with the requirement of a vicious will for the second offense where the only additional element is that the firearm is a machinegun. This is

particularly true where the type of firearm chosen can potentially result in a sixfold sentencing increase." *Id.*

The panel for these reasons vacated Mr. Pérez's § 924(c)(1)(B)(ii) conviction and remanded for a new trial. Op. 65-66.

## REASONS FOR DENYING THE PETITION

### I.  The Panel's Decision Is Correct And Creates No Conflict With Supreme Court Precedent.

18 U.S.C. § 924(c)(1)(B)(ii) imposes a consecutive mandatory-minimum 30-year sentence for possessing a machinegun in furtherance of a drug-trafficking crime. The government's petition asserts that Congress silently intended to allow a jury to convict even where the defendant has no knowledge that the gun was a machinegun. That means individuals face a 30-year mandatory-minimum sentence (on top of any other sentences) even if they did not know the gun was automatic and had no intent to have an automatic gun. The panel properly rejected that contention. No Supreme Court decision holds in any remotely analogous context that Congress intended sub silentio that a core element of a crime giving rise to a consecutive, decades-long mandatory-minimum sentence requires no scienter.

The government's position would also impose dire real-world consequences. As the Supreme Court and others have explained, and as this case illustrates, machineguns (*i.e.*, guns with fully automatic firing capabilities) and semiautomatic guns can have identical or very similar appearances, semiautomatic guns can easily be converted into automatic guns, and individuals charged under § 924 often obtain their firearms from others. *See Staples*, 511 U.S. at 615; *United States v. Burwell*, 690 F.3d 500, 503 (D.C. Cir. 2012); *id.* at 548 & n.22 (Kavanaugh, J., dissenting). It is thus highly plausible for a person to possess a gun that he does not know is a machinegun, further underscoring that the panel's decision is correct and warrants no further review.

## A.   *O'Brien* and *Staples* strongly support the panel's decision.

Section 924(c)(1)(B)(ii) criminalizes possession of a "machinegun" to violate § 924(c)(1)(A), which in turn criminalizes possessing a firearm in furtherance of a drug-trafficking crime. 18 U.S.C. § 924(c)(1)(A), (B)(ii). The Supreme Court has twice held that § 924(c)(1)(B)(ii) establishes its own distinct substantive offense predicated on a critical element: having a machinegun. *See Castillo v. United States*, 530 U.S. 120, 121 (2000); *O'Brien*, 560 U.S. at 229.

In *Castillo*, the Court, interpreting an earlier, similar version of § 924(c)(1)(B)(ii), held that using or possessing a machinegun constituted "an element of a separate offense" and "define[d] a separate crime." 530 U.S. at 121, 123-24. The Court explicitly rejected the idea that "one might consider the use of a machinegun" merely "as a means (or a manner) in which" a person "carried out the more basic underlying" offense. *Id.* at 126.

The Supreme Court reiterated the point in *O'Brien*. By then, Congress had amended the statute to its current form, mainly by "divid[ing] what was once a lengthy principal sentence into separate paragraphs," such that the machinegun offense was now located in its own subparagraph. 560 U.S. at 226-27. In considering the effect of that "restructuring" amendment, the Court adhered to its prior holding that possession of a machinegun under § 924(c)(1)(B)(ii) represents "an element of a separate offense," *id.* at 229, 234—one that "lies 'closest to the heart of the crime at issue,'" *id.* at 227 (quoting *Castillo*, 530 U.S. at 127).

Critically, the Court stressed that its holding flowed from "[t]he immense danger posed by machineguns, the moral depravity in choosing

the weapon, and the substantial increase in the minimum sentence provided by the statute." *Id.* at 230. And the Court emphasized § 924(c)(1)(B)(ii)'s "drastic, sixfold increase" in sentencing from the five-year mandatory minimum for the distinct underlying offense to a consecutive 30-year mandatory minimum. *Id.* at 229. And it further distinguished the substantive machinegun element in § 924(c)(1)(B)(ii) from the brandishing and discharge "sentencing factors" in § 924(c)(1)(A). *Id.* at 233-34.

Meanwhile, in *Staples*, the Court squarely held that another provision criminalizing unlawful possession of a machinegun, and imposing a prison sentence of up to 10 years, required the government to prove that the defendant *knew* the gun was a machinegun. 511 U.S. at 602; *see* 26 U.S.C. §§ 5845(a)(6), 5845(b), 5861(d). The Court pointed to "the traditional rule" that "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime." 511 U.S. at 606. The Court also highlighted "[t]he potentially harsh penalty attached to violation of" the statute, explaining that, "[h]istorically, the penalty imposed under a statute has been a significant

consideration in determining whether the statute should be construed as dispensing with *mens rea.*" *Id.* at 616.

As the panel correctly noted, these cases firmly support its decision. They indicate that Congress in imposing an extraordinary, consecutive *30-year* mandatory-minimum sentence under § 924(c)(1)(B)(ii) did not silently dispense with scienter as to the offense's crucial machinegun element. Indeed, *Staples* expressly held as much with respect to a machinegun prohibition featuring a maximum 10-year sentence. And *O'Brien* plainly states that Congress imposed § 924(c)(1)(B)(ii)'s extreme penalty precisely because of "the moral depravity in choosing the weapon," 560 U.S. at 230, thereby strongly suggesting that awareness that the gun is fully automatic is an inherent part of the crime. *See* Op. 21-22, 27-28.

## B. The government misconstrues *Dean*, *Carter*, and *Flores-Figueroa*.

The government's petition focuses instead on *Dean v. United States*, 556 U.S. 568 (2009), and *Carter v. United States*, 530 U.S. 255 (2000). The government misreads both cases, as well as *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), on which the panel relied. Pet. 10-14.

**1.** The Court in *Dean* held that an accidental discharge of a firearm in connection with an underlying crime of violence or drug-trafficking crime falls within 18 U.S.C. § 924(c)(1)(A)(iii). That offense carries an additional term of not less than 10 years' imprisonment "if the firearm is discharged," over and above the baseline sentence "of not less than 5 years" prescribed in § 924(c)(1)(A)(i). The Court's decision relies heavily on its characterization of the additional 10-year term in the discharge provision as a mere "sentencing factor" or "sentencing enhancement," not an element of the offense. 556 U.S. at 571, 573, 574, 576.

As the *Pérez-Greaux* panel fully explained, *Dean* does not apply here. Op. 21. *Dean* addressed only how the scienter presumption applies to a sentencing enhancement. The government's assertion that the sentencing-factor aspect "played no real role in *Dean*'s outcome," Pet. 13, is belied by not only *Dean* itself but also *O'Brien*'s express distinguishing of *Dean*. *Dean* stated repeatedly that the question before the Court was whether the scienter presumption "extends to the *sentencing enhancements*" or "*sentencing factors*" in § 924(c)(1)(A). 556 U.S. at 573, 574 (emphases added)*; see also id.* at 571, 574, 576 (same). *O'Brien* then confirmed that this sentencing feature was a critical distinction between

§ 924(c)(1)(A)(iii) in *Dean* and § 924(c)(1)(B)(ii) in *O'Brien*. As the Court explained, *Dean* pertained to "sentencing factors" while the machinegun provision in § 924(c)(1)(B)(ii) "is an element of the crime, not a sentencing factor." 560 U.S. at 230. *O'Brien* thus fatally undermines the government's claim that the "same analysis applies to § 924(c)(1)(B)(ii)" as *Dean* applied to the sentencing enhancement in § 924(c)(1)(A)(iii). Pet. 17.

The Court also emphasized in *Dean* that the § 924(c)(1)(A)(iii) discharge provision "punish[ed] individuals for the unintended consequences of their unlawful acts." 556 U.S. at 575. This aspect of *Dean* is also inapt. The "unlawful act" in this case is possessing a machinegun (in furtherance of a drug-trafficking offense), not merely the drug-trafficking offense itself. The government's suggestion, Pet. 11-12, that possession of the machinegun is instead the "unintended consequence[]" of an underlying unlawful act ignores *Castillo* and *O'Brien*, as well as the common-sense reality that possessing a machinegun in the § 924(c)(1)(B)(ii) context is properly understood as a "cho[ice]," *O'Brien*, 560 U.S. at 230, rather than an unintended consequence.

**2.** The government seizes upon the Supreme Court's statement in *Carter* that "[t]he presumption in favor of scienter requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" 530 U.S. at 269 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)); *see also Elonis v. United States*, 575 U.S. 723, 736 (2015) (quoting *Carter*). According to the government, this language stands for the proposition that the presumption of scienter does not apply to a provision that criminalizes conduct committed as part of another, underlying crime. Pet. 10-12.

*Carter* says no such thing. *Carter* addressed a bank-robbery statute punishing "[w]hoever, by force and violence, or by intimidation, takes … from the person or presence of another … any … thing of value belonging to, or in the … possession of, any bank." 18 U.S.C. § 2113(a). The Court held that scienter principles required that an individual may be convicted only upon "proof of knowledge with respect to the *actus reus* of the crime." 530 U.S. at 269. Thus, the Court explained, the government must show that the defendant knew he was taking property by force or intimidation,

and so the statute would not apply, for example, if the defendant had acted "while sleepwalking." *Id.*

The panel's ruling in this case is in keeping with *Carter*. The actus reus in § 924(c)(1)(B)(ii) is possession of a machinegun; that is "the heart of the crime," without which there can be no § 924(c)(1)(B)(ii) conviction. *O'Brien*, 560 U.S. at 227 (quoting *Castillo*, 530 U.S. at 127). The panel thus held here that conviction requires "proof of knowledge with respect to th[is] actus reus," *Carter*, 530 U.S. at 269—*i.e.*, proof that the defendant knew that the firearm in question was in fact a machinegun. That conclusion is fully consistent with *Carter*'s analysis, and the panel's decision properly reflects *Carter*'s holding and rationale.

Indeed, the government's resort to *Carter* serves only to underscore the oddity of its argument that § 924(c)(1)(B)(ii) is a strict-liability offense: Like *Carter*, the Supreme Court decisions that the rehearing petition invokes as supposed foils for the panel's ruling hold almost uniformly that the provision at issue in each case *has* a scienter requirement. *See* Pet. 10-14. The exception is *Dean*, which, as we have shown, is a very different case.

**3.** The government is similarly mistaken in criticizing the panel's reliance on *Flores-Figueroa*. Pet. 14. The panel correctly explained that *Flores-Figueroa* confirms the error in the government's position. Op. 24.

The Court in *Flores-Figueroa* addressed an aggravated-identity-theft statute that imposes a mandatory, consecutive two-year prison term on any person convicted of certain other crimes if, during and in relation to the underlying crime, the offender "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 556 U.S. at 647 (quoting 18 U.S.C. § 1028A(a)(1)). Noting "textual reasons" bolstering its conclusion, the Court held that, to obtain a conviction, the government must prove that the defendant knew that the means of identification he knowingly used actually belonged to another person. *Id.* at 650.

The panel correctly determined that "*Flores-Figueroa* directly undermines the government's argument," because it imposes a scienter requirement in a statutory setting where, as here, the defendant by definition has already committed another crime. Op. 24-25. The government asserts that the Court's analysis in *Flores-Figueroa* did not implicate the framework at issue in this case, *see* Pet. 14, but that is

precisely the point. As the panel explained, if the government were right that scienter presumptively applies only with respect to conduct that is otherwise innocent, *Flores-Figueroa* would have come out the other way, because the provision at issue "already included [a] predicate crime." Op. 24. And to the extent the government refers to the fact that the statute in *Flores-Figueroa* contained the term "knowingly," Pet. 14, the Supreme Court recently reaffirmed that, although "the presumption in favor of scienter" applies "with equal or greater force when Congress includes a general scienter provision in the statute itself," it remains fully applicable "even when Congress does not specify any scienter in the statutory text." *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019); *see* Op. 16-17.

The government's position is not only inconsistent with the Supreme Court's teachings; it also yields absurd results. For example, violation of § 924(c)(1)(A) has long required *knowing* possession of a firearm, *see, e.g.*, *United States v. Ramírez-Frechel*, 23 F.4th 69, 73-74 (1st Cir. 2022), but the government's position would eliminate that scienter requirement altogether since § 924(c)(1)(A) requires a predicate drug-trafficking crime or crime of violence, *see Burwell*, 690 F.3d at 546 (Kavanaugh, J., dissenting).

The government's stance likewise cannot be squared with 18 U.S.C. § 922(o), which criminalizes unlawfully possessing a machinegun. People charged with the § 924(c)(1)(B)(ii) machinegun offense are often also charged under § 922(o), which provides a comparatively lenient maximum 10-year sentence and requires scienter regarding the fact that the weapon is a machinegun. *See, e.g.*, *United States v. Nieves-Castaño*, 480 F.3d 597, 599 (1st Cir. 2007); Rule 28(j) Letter, Doc. No. 117981083 (Mar. 1, 2023). The government concedes it withdrew a § 922(o) count here "to avoid confusing the jury with conflicting instructions." Pet. 4 n.2. Which proves our point: It makes no sense that scienter as to a gun's being a machinegun is required under § 922(o) but not (the government maintains) under the more harshly penalized § 924(c)(1)(B)(ii) offense. *See* Op. 31-32. That is especially true given that both offenses are governed by the same "machinegun" definition. *See* 18 U.S.C. § 921(a)(24).

## II.    The Panel's Decision Creates No Intra-Circuit Conflict.

The government's cursory intra-circuit split argument at the end of the petition just rehashes its merits contentions and demonstrates that

the panel's approach is consistent with First Circuit precedent. Pet. 19. Two post-*O'Brien* cases are illustrative.

In *United States v. Rivera-Rivera*, this Court noted that, per its decision in *O'Brien* (later affirmed by the Supreme Court), "*knowing possession of a machine gun* is an element of the crime that must be proven to the jury" under § 924(c)(1)(B)(ii). 555 F.3d 277, 291 n.14 (1st Cir. 2009) (emphasis added). More recently, this Court hewed to that view in *United States v. Laureano-Pérez*, 797 F.3d 45 (1st Cir. 2015). In assessing the sufficiency of the evidence, it considered a defendant's § 924(c)(1)(B)(ii) and § 922(o) counts together. And it did so accepting the premise that both counts require a showing that the accused "knew the firearms had been modified to fire automatically, thus bringing them under the definition of a machinegun." *Id.* at 74-75 (citation omitted); *see* Op. 35-36.

The government ignores *Rivera-Rivera* and *Laureano-Pérez*. Instead, it cherry-picks statements from *United States v. Morosco*, 822 F.3d 1 (1st Cir. 2016), and *United States v. Collazo-Aponte*, 281 F.3d 320 (1st Cir. 2002), but neither case involved the scienter presumption's application to § 924(c). They are also readily distinguishable. In *Morosco*,

the issue was not whether there was a mens rea requirement. Rather, the jury instruction included a mens rea requirement, and the defendant simply argued for a different formulation. 822 F.3d at 20-21. *Collazo-Aponte* fares no better. There, this Court explained that the statutory element at issue (drug quantity and type) was irrelevant to whether the defendant violated the statute of conviction, so there was no knowledge requirement regarding that element. *Collazo-Aponte*, 281 F.3d at 326.

The government then invokes *United States v. Shea*, 150 F.3d 44 (1st Cir. 1998), and *United States v. Peña-Lora*, 225 F.3d 17 (1st Cir. 2000), which predate *O'Brien* and are inapposite for that reason alone. *Shea* rejected application of a scienter presumption to what is now § 924(c)(1)(B)(i), a separate and distinct provision addressing semiautomatic weapons and carrying a 10-year sentence. *Shea*'s principal rationale was that § 924(c)(1)(B)(i) was a sentencing enhancement, not an offense element, *see United States v. Mojica-Báez*, 229 F.3d 292, 310 (1st Cir. 2000)—a rationale that *O'Brien* subsequently repudiated regarding § 924(c)(1)(B)(ii). *Peña-Lora* meanwhile limits the mens rea issue to a footnote parenthetically referring to dicta in *Shea*,

and Peña-Lora had waived his argument on this point anyway. 225 F.3d at 32 n.12.

## III. The Government Overstates The Scope And Significance Of Any Inter-Circuit Conflict.

The government's claim of an inter-circuit split—relegated to the petition's final paragraph—is even more bare-bones. Pet. 20. The circuits that have come out the other way simply adhered to their controlling pre-*O'Brien* holdings (and expressly said so). *See United States v. Haile*, 685 F.3d 1211, 1218 (11th Cir. 2012); *Burwell*, 690 F.3d at 516. Those pre-*O'Brien* holdings turned on the now-erroneous understanding of § 924(c)(1)(B)(ii) as a mere sentencing enhancement. *See United States v. Ciszkowski*, 492 F.3d 1264, 1269 (11th Cir. 2007); *United States v. Harris*, 959 F.2d 246, 259 (D.C. Cir. 1992). As shown above, and as the panel rightly observed, *O'Brien* is fundamental to the analysis and requires consideration of the issue on a clean slate, which is what the panel correctly did here. Op. 32-34.

The claimed second split—whether the scienter presumption applies to § 924(c) offenses more generally—is no split at all. The government again regurgitates its flawed merits position and attempts to marshal one more out-of-circuit case. Pet. 20. But that case involved

the provision in § 924(c)(1)(B)(i) addressing semiautomatic weapons, not the distinct machinegun offense at issue here. *United States v. Woodberry*, 987 F.3d 1231, 1237-39 (9th Cir. 2021). Indeed, it relied heavily on *Dean*, *id.*, which, as shown, is inapplicable.

## CONCLUSION

The Court should deny rehearing.

Respectfully submitted,

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico
241 F.D. Roosevelt Avenue
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Kevin_Lerman@fd.org

**s/FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appeals Division
First Circuit Bar No. 1175955

**s/KEVIN E. LERMAN**
Research & Writing Attorney
First Circuit Bar No. 1194361

San Juan, Puerto Rico
February 7, 2024

*Attorneys for Defendant-Appellant*
*Luis O. Pérez-Greaux*

# CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Fed. R. App. P. 35(e) because this response contains 3,863 words, excluding the parts of the response exempted by of Fed. R. App. P. 32(f).

This response uses proportionally spaced typeface, 14-point Century Schoolbook font. It complies with typeface and type style requirements of Fed. R. App. P. 32 (a)(5)-(6).

s/KEVIN E. LERMAN
Research & Writing Attorney
First Circuit Bar No. 1194361

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on February 7, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/Kevin E. Lerman
Research & Writing Attorney
First Circuit Bar No. 1194361